DECISION AND JUDGMENT ENTRY
{¶ 1} Eric Knott appeals the Athens County Common Pleas Court's judgment denying his petition for postconviction relief without a hearing. Knott contends he received ineffective assistance of counsel because his defense attorneys advised him to plead guilty to a crime he did not commit, i.e., the aggravated murder of Ruth Malcolm. In addition, he contends he received ineffective assistance of counsel because his defense attorneys advised him to plead guilty to murder even though he did not kill the victim, Dave Malcolm, on purpose. Because Knott's petition does not contain any operative facts that would establish substantive grounds for relief, we conclude the court did not err in dismissing the petition without holding an evidentiary hearing. Accordingly, we affirm the judgment of the trial court.
 {¶ 2} According to the state, an argument ensued between Knott and Dave Malcolm in September 2001. As a result of the argument, Knott shot and killed Mr. Malcolm. Knott then proceeded to Mr. Malcolm's house and enticed Ruth Malcolm to leave the house. Upon luring Mrs. Malcolm outside, Knott stabbed her multiple times, thereby causing her death. Afterwards, Knott destroyed the rifle he had used to kill Mr. Malcolm and hid it.
 {¶ 3} Two months later, the grand jury indicted Knott on one count of murder with a firearm specification, for killing Mr. Malcolm, and one count of aggravated murder with death penalty specifications, for killing Mrs. Malcolm. After the first day of trial, the state issued a bill of information charging Knott with tampering with evidence. That same day, Knott entered into a plea agreement with the state whereby he pled guilty to murder, aggravated murder, and tampering with evidence. He also stipulated to the firearm specification. In exchange for Knott's guilty pleas, the state amended the aggravated murder charge to remove the death penalty specifications. The trial court accepted Knott's guilty pleas, found him guilty of the three charges, and imposed sentence in accordance with the state's recommendation. Knott did not file an appeal.
 {¶ 4} In January 2003, Knott filed a pro se petition for postconviction relief. In his petition, Knott claimed his guilty pleas were involuntary because he received ineffective assistance of counsel. First, Knott claimed his attorneys were ineffective for advising him to plead guilty to aggravated murder even though he did not kill Mrs. Malcolm. Second, he claimed his attorneys were ineffective for advising him to plead guilty to murder when he did not purposely kill Mr. Malcolm. To support his petition, Knott attached his own affidavit, which stated that he did not kill Mrs. Malcolm. He also stated that he did not intend to kill Mr. Malcolm and that he would not have pled guilty to murder if his attorneys had explained that the state would have to prove that he purposely killed Mr. Malcolm. Finally, he indicated that he only pled guilty to the aggravated murder and murder charges because his attorneys advised him to do so in order to avoid the death penalty.
 {¶ 5} The trial court dismissed Knott's petition for postconviction relief without holding an evidentiary hearing. It issued a thorough and reasoned decision in which it concluded that Knott had failed to establish any substantive basis for his claim that he received ineffective assistance of counsel. The court found that Knott had "presented no operative facts showing that counsel's performance negatively impacted the knowing, intelligent, and voluntary nature of [his] plea." Knott now appeals the court's entry denying his petition for post-conviction relief and raises the following assignment of error: "The trial court erred to the prejudice of the Defendant/Appellant by denying him due process and effective assistance of counsel in violation of the Fifth, Sixth, and Fourteenth Amendment when it did not hold an evidentiary hearing on the timely post-conviction petition filed by the Appellant."
 {¶ 6} In his sole assignment of error, Knott argues the court erred in dismissing his petition for postconviction relief without holding an evidentiary hearing.
 {¶ 7} Before we can consider Knott's assignment of error, we must address a jurisdictional issue raised by this appeal. When a court dismisses a petition for post-conviction relief without an evidentiary hearing, it must make findings of fact and conclusions of law. R.C.2953.21(C). The time for appeal does not begin to run until the findings of fact and conclusions of law are filed. State v. Mapson (1982),1 Ohio St.3d 217, 218-19, 438 N.E.2d 910.
 {¶ 8} However, designated findings of fact and conclusions of law are not required if the court issues a judgment entry that is sufficiently detailed to permit appellate review. State ex rel. Carrionv. Harris (1988), 40 Ohio St.3d 19, 20, 530 N.E.2d 1330. See, also Statev. Young (Jan. 18, 1996), Lawrence App. No. 95CA01. Although the court in the present case did not specifically label its findings and conclusions, it issued a detailed judgment entry setting forth its reasons for denying the petition. This entry satisfies the purpose of R.C. 2953.21(C). Accordingly, we find that we have jurisdiction to hear this appeal.
 {¶ 9} The post-conviction relief statute, R.C. 2953.21, provides a remedy for a collateral attack upon judgments of conviction claimed to be void or voidable under the United States or the Ohio Constitution. See R.C. 2953.21(A)(1); State v. Hatton (Aug. 4, 2000), Pickaway App. No. 00CA10. In order to prevail on a petition for postconviction relief, the petitioner must establish that he has suffered an infringement or deprivation of his constitutional rights. R.C. 2953.21(A)(1). See, e.g.State v. Calhoun, 86 Ohio St.3d 279, 1999-Ohio-102, 714 N.E.2d 905.
 {¶ 10} The filing of a petition for postconviction relief does not automatically entitle the petitioner to an evidentiary hearing. See R.C.2953.21(C); Calhoun, 86 Ohio St.3d at 282, citing State v. Cole (1982),2 Ohio St.3d 112, 443 N.E.2d 169. Before the trial court can grant a hearing on the petition, the court must determine "whether there are substantive grounds for relief." R.C. 2953.21(C). When making this determination, the court must consider the petition along with any supporting affidavits, documentary evidence, and all the files and records of the case. Id. If the trial court finds no substantive grounds for relief, the petition should be dismissed without a hearing. Calhoun,86 Ohio St.3d at 282-83; State v. Jackson (1980), 64 Ohio St.2d 107,110, 413 N.E.2d 819; R.C. 2953.21(E).
 {¶ 11} We review a trial court's decision dismissing a petition for post-conviction relief without a hearing under a de novo standard of review. State v. Miller, Ross App. No. 01CA2614, 2002-Ohio-407; State v.Platz, Washington App. No. 00CA50, 2001-Ohio-2550. Therefore, we will conduct our own independent review of the record to determine whether Knott's petition presents substantive grounds for relief. Before doing so, however, we address an argument Knott raises concerning res judicata.
 {¶ 12} In his brief, Knott argues that res judicata does not bar his ineffective assistance of counsel claim. He relies on Massaro v.United States (2003), 538 U.S. 500, 123 S.Ct. 1690, 155 L.Ed.2d 714, to support his argument. However, a review of the trial court's decision shows that the court did not find Knott's claim barred by the doctrine of res judicata. Rather, the court concluded that res judicata did not bar Knott's ineffective assistance of counsel claim because it relied on evidence outside the record. We agree and proceed to review the court's decision that the petition fails to establish substantive grounds for relief.
 {¶ 13} Knott pled guilty to murder, aggravated murder, and tampering with evidence. Generally, a guilty plea constitutes a complete admission of guilt and renders irrelevant constitutional violations unless they are logically inconsistent with the valid establishment of factual guilt. See Crim.R. 11(B)(1); United States v. Broce (1989),488 U.S. 563, 109 S.Ct. 757, 102 L.Ed.2d 927; Menna v. New York (1975),423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195. A defendant may, however, challenge whether the guilty plea was knowing and voluntary. See Statev. Kelley (1991), 57 Ohio St.3d 127, 566 N.E.2d 658. Here, Knott argues that his guilty pleas were not knowing, intelligent, and voluntary due to his attorneys' ineffectiveness.
 {¶ 14} In order to prove ineffective assistance of counsel in the context of a guilty plea, a defendant must demonstrate that his counsel's performance was deficient, i.e., not reasonably competent, and that he suffered prejudice as a result of his counsel's deficient performance.Hill v. Lockhart (1985), 474 U.S. 52, 57, 106 S.Ct. 366, 88 L.Ed.2d 203;State v. Xie (1992), 62 Ohio St.3d 521, 584 N.E.2d 715. Specifically, the defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. Hill, 474 U.S. at 58-59. However, there is a strong presumption that licensed attorneys provide competent representation. State v. Lott (1990), 51 Ohio St.3d 160, 174-5,555 N.E.2d 293. Thus, Knott must offer some credible operative facts to overcome this presumption. Knott's petition is fatally defective because he has presented no credible facts to suggest that his attorneys' performance was deficient.
 {¶ 15} In his first argument, Knott contends his defense attorneys provided ineffective assistance by advising him to plead guilty to aggravated murder. He claims that he did not kill Mrs. Malcolm, as she was killed by Russ Abrams. Knott contends that he only pled guilty because his defense attorneys told him that the state would drop the death penalty specifications if he pled guilty to the aggravated murder and murder charges.
 {¶ 16} The mere fact that counsel relays an offer and recommends accepting it cannot per se be the basis for a successful claim of ineffective assistance. An attorney has a duty to relay offers from opposing counsel to his client. State v. Neace (Feb. 14, 1996), Scioto App. No. 95CA2353. See, also, Krahn v. Kinney (1989), 43 Ohio St.3d 103,106, 538 N.E.2d 1058; State v. Manning (July 12, 1985), Wood App. No. WD-84-84. In addition, a criminal defense attorney has an ethical obligation to advise his client fully on whether a particular plea is desirable. See EC 7-7; State v. Lavender, Lake App. No. 2000-L-049, 2001-Ohio-8790. Thus, where the defendant receives a recognizable benefit from accepting such an offer, it may be difficult for the defendant to rebut the presumption that the attorney's recommendation was sound strategy.
 {¶ 17} We conclude that Knott failed to carry his burden for three primary reasons. First, a bare belated assertion of innocence is not an operative fact. Knott claims his counsel were deficient because they advised him to plead guilty when he was innocent. However, Knott must introduce some evidence, i.e., operative facts, of his innocence beyond an unsupported claim that someone else committed the murder. The fact that the victims died by different weapons, i.e., Mr. Malcolm died from gunshots while Mrs. Malcolm died from knife wounds, is not a "operative fact of Knott's innocence." Nor is Knott's unsupported and self-serving claim of Abrams' culpability.
 {¶ 18} Second, although Knott's affidavit proclaims his innocence, the trial court properly exercised its discretion in rejecting its credibility. As noted by the trial court, Calhoun, supra, recognizes the need to assess the credibility of the affiant in the context of the entire record. Here, the trial court carried out a lengthy and detailed Crim.R. 11 dialogue with Knott. The court made every effort to insure that Knott understood the charges, that he was voluntarily and knowingly entering his plea and that no undue influences or promises caused him to do so. Despite the court's compliance with Crim.R. 11, Knott gave no indication that he had any misgivings about entering the negotiated plea. In that dialogue he specifically acknowledged that his change of plea would be a factual admission of his guilt. Moreover, he did not indicate that he was entering an "Alford plea", i.e., admitting guilt when he was innocent in order to avoid the potential death penalty.
 {¶ 19} Knott's belated argument of factual innocence is not credible. If someone else had in fact killed Ruth Malcolm, why would he not contest the issue or, at a minimum, indicate that he was waiving the opportunity to contest it only grudgingly? Given that Ruth Malcolm's murder was the only charge carrying the death penalty specification, it seems illogical he would have waived a chance to establish his factual innocence to that charge without some comment at the plea hearing. In the context of the extensive Crim.R. 11 dialogue that occurred, the trial court was justified in finding the affidavit proclaiming his innocence to be lacking in credibility. See, Calhoun, 86 Ohio St.3d 279, paragraph one of the syllabus (trial court may judge the credibility of affidavits in determining whether they represent statements of fact).
 {¶ 20} Finally, this is not a situation where Knott received no benefit from his plea. Knott clearly received a benefit since he no longer faced the possibility of a death sentence. Thus, trial counsel remain clothed in the presumption that they acted competently.
 {¶ 21} In his second argument, Knott contends his defense attorneys provided ineffective assistance by advising him to plead guilty to the murder of Mr. Malcolm. Knott does not deny that he shot Mr. Malcolm; however, he contends he did not "purposely" kill him, as is required for murder. See R.C. 2903.02(A). As the trial court noted, Knott's argument becomes somewhat confusing at this point. Knott contends his actions constitute voluntary manslaughter, not murder. However, he also appears to argue that he killed Mr. Malcolm in self-defense, which is inconsistent with his voluntary manslaughter argument and would constitute an intentional or purposeful act. In addition, it appears Knott has confused the requirement of "prior calculation and design", which is an element of aggravated murder, with the required mental state for murder, i.e., purposely. In his petition, Knott states that he did not go to Mr. Malcolm's house to kill him; in his appellate brief, he admits killing Mr. Malcolm but denies "pre-meditation when doing it."
 {¶ 22} However, the essence of Knott's argument seems to be that his attorneys advised him to plead guilty to Mr. Malcolm's murder without properly investigating the facts to determine if all the elements of murder were present. He contends his defense attorneys "never heard the entire story" but rather, advised him to plead guilty in order to avoid the death penalty. He also claims in his petition that "his * * * attorney's (sic) should have found out all the surrounding facts * * * (.)".
 {¶ 23} As the trial court noted, if Knott's attorneys never heard his story, it was Knott's own fault. According to the record, Knott did not enter his guilty pleas until more than six months after his attorneys were appointed. Thus, he had plenty of time to tell his attorneys what occurred that night. Moreover, Knott does not claim that he was prevented from telling his attorneys his story. Finally, the record indicates that defense counsel demanded discovery under Crim.R. 7(E), governing a request for a bill of particulars, and Crim.R. 16, governing discovery and inspection. Thus, Knott's contention that his attorneys did not properly investigate the facts is not credible.
 {¶ 24} Knott does not claim that his attorneys coerced him into pleading guilty. Rather, he claims his attorneys advised him to plead guilty to Mr. Malcolm's homicide in order to avoid the possibility of the death sentence for Mrs. Malcolm's death. Apparently, the prosecutor presented a package deal, take it or leave it, that included pleading guilty to both murders. Knott readily admits that he chose to plead guilty "to guarantee that he would not be sentenced to death." In his petition, Knott states: "Certainly in a moment of judgment concerning one's life or death, there is only one basic human instinct, survival, which is what the Petitioner chose." However, a guilty plea is not involuntary simply because it was entered to avoid the death penalty. SeeBrady v. United States (1970), 397 U.S. 750, 90 S.Ct. 1463,25 L.Ed.2d 747. It appears that after entering a knowing, intelligent, and voluntary guilty plea, Knott now regrets his decision. Unfortunately, regret does not constitute a substantive ground for relief, and Knott has failed to demonstrate that he received ineffective assistance of counsel.
 {¶ 25} Because Knott has failed to establish any substantive grounds for relief, we conclude the court did not err in dismissing his petition without holding an evidentiary hearing. Accordingly, Knott's assignment of error has no merit and the judgment of the trial court is affirmed.
Judgment Affirmed.
Abele, J. Evans, J.: Concur in Judgment and Opinion.